UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SEDLEY ALLEY, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:06-0645 |
| ) | Judge Trauger |
| DR. BRUCE LEVY, in his official capacities ) | |
|    as the Chief Medical Examiner for the ) | |
|    State of Tennessee and Medical ) | |
|    Examiner for the Metropolitan ) | |
|    Government of Nashville and ) | |
|    Davidson County, Tennessee; and ) | |
| ) | |
| RICKY BELL, in his official capacity as ) | |
|    Warden, Reverend Maximum ) | |
|    Security Institution ) | |
| ) | |
|    Defendants. ) | |

## MEMORANDUM

Pending before the court is the Motion for Preliminary Injunction filed by the plaintiff, Sedley Alley (Docket No. 2), to which defendants Dr. Bruce Levy and Ricky Bell have responded (Docket No. 4). For the reasons discussed herein, the plaintiff's motion will granted.

## FACTS AND PROCEDURAL HISTORY

The plaintiff is a condemned inmate at Riverbend Maximum Security Institution in Nashville, Tennessee. His execution has been scheduled for 1:00 a.m. on June 27, 2006. After the execution, Dr. Bruce Levy plans to perform an autopsy on the plaintiff. The plaintiff has

1

sought a preliminary injunction to prevent Dr. Levy from performing the autopsy, alleging that it would be in direct conflict with his sincere religious beliefs.

## ANALYSIS

### I. Statutory Authority for the Autopsy

Apart from the plaintiff's free exercise challenge, the court must grant an injunction in this case on the basis that there is no statutory authority for this autopsy. The defendants have made no allegation that the autopsy is a formal part of the Tennessee lethal injection protocol. Nor is the autopsy authorized in T.C.A. § 38-7-106, which provides authority for autopsies only in cases involving homicide, suspected homicide, suicide, or violent, unnatural, or suspicious deaths. The case at hand—the state sponsored execution of Mr. Alley—constitutes none of those specific examples, despite Dr. Levy's opinion testimony, given in another case, that death by lethal injection "represents" a homicide.[1]

The state relies on language in T.C.A. § 38-7-108(a)(1) ("Death Under Suspicious, Unusual, or Unnatural Circumstances") requiring the reporting of deaths "in prison" to the medical examiner in its attempt to demonstrate statutory authority for the autopsy. Section 38-7-108(a)(1), in conjunction with T.C.A. § 38-7-109(a), does authorize autopsies in certain cases. However, the term "in prison" as used in § 38-108(a)(1) must be interpreted in the context of the statute's heading: "Death Under Suspicious, Unusual, or Unnatural Circumstances." Although opponents of the death penalty would no doubt contend that lethal injection qualifies under all

---

[1] If lethal injection performed in capital cases were "homicide," would not all those participating in the scheduled event would be subject to prosecution?

2

three of these circumstances, the plain language of the statute's heading mandates that it not be read to include deaths planned by the state, but rather deaths that require an investigation; that is, deaths that are "suspicious" or "unnatural" or arise under "unnatural circumstances." It is a basic law of construction that the language of a statute must be interpreted in accordance with the statute's title. Therefore, neither § 38-7-106 nor § 38-7-108(a)(1) provides authority for the state to perform an autopsy in this case.

## II. Free Exercise

The analysis traditionally employed when considering whether to grant a preliminary injunction includes four factors: (1) the likelihood that the moving party will be irreparably harmed absent a preliminary injunction; (2) the prospect that others will be harmed if the court grants the preliminary injunction; (3) the public interest in granting the preliminary injunction; and (4) the likelihood that the party seeking the preliminary injunction will prevail on the merits of his claim. *See Mich. Coal. of Radioactive Material Users, Inc v Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). These factors are not prerequisites that each must be met, but rather are "interrelated considerations that must be balanced together." *Id.* at 153. The Sixth Circuit has recognized that courts applying this test to motions for preliminary injunctions must make decisions based upon "incomplete factual findings and legal research." *Id* (internal quotation omitted). Bearing this obstacle in mind, the court now turns to an analysis of each of the four factors.

Detailed discussion of the first factor clearly is not necessary in execution-related cases such as this one. Absent a preliminary injunction, the state will perform an autopsy on the plaintiff's body after his execution. Mr. Alley will not be able to rectify that situation, which he

3

alleges will violate his sincerely held religious beliefs.

Next the court examines the potential harm to others and any public interest in granting or not granting the injunction. The only interest advanced by the state in performing an autopsy on Mr. Alley's body is to use the evidence thus gathered in future litigation brought by other death penalty inmates challenging the state's present lethal injection procedure. This interest does not outweigh Mr. Alley's substantial interest in avoiding what he believes to be the desecration of his corpse. Moreover, it is important to note that a multitude of states follow the same lethal injection procedure as Tennessee, so the state's interest may be served equally by utilizing autopsies performed following lethal injections in those states.

Finally, the court turns to discuss the likelihood of success on the merits. Under applicable law, the plaintiff must first demonstrate a substantial burden to a sincere religious belief, after which the government "must demonstrate that the action to be taken . . . is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest." *Workman v. Levy*, 136 F. Supp. 2d 899, 900 (M.D. Tenn. 2001). The court finds that the plaintiff is likely to demonstrate "that a government [action] burdens the [plaintiff's] practice of his . . . religion . . . by preventing him from engaging in conduct or having a religious experience that the faith mandates," by requiring him to submit to an autopsy. *Bryant v. Gomez*, 46 F.3d 948, 949 (9th Cir. 1995). Under the applicable standard, "the burden must be substantial and an interference with a tenet or belief that is central to a religious doctrine." *Id.* Because desecration of corpses runs counter to a wide range of religions, the plaintiff is very likely to meet that burden. *See, e.g., Weberman v. Zugibe*, 394 N.Y.S. 2d 371, 372 (N.Y. Sup. Ct. 1977) (preventing an autopsy from taking place that would violate the deceased's Orthodox Jewish

religion); *Atkins v. Medical Examiner of Westchester County*, 418 N.Y.S. 2d 839, 841 (N.Y. Sup. Ct. 1979).

Likewise, the government is unlikely to demonstrate that performing the autopsy is the least restrictive means of furthering a compelling government interest. The only interest that the government has asserted in this case is its interest in gathering evidence to uphold its lethal injection protocol in future litigation. Putting aside whether that interest is a compelling one, as shown above, performing an autopsy on Mr. Alley cannot be the least restrictive means of furthering that interest because autopsies following executions in other states that follow the same protocol should be available to the state. *See Workman v. Levy*, 136 F. Supp. 2d 899, 900 (M.D. Tenn. 2001) (in an autopsy case, holding that "[d]efendants have not shown a compelling interest sufficient to outweigh [plaintiff's] religious rights").

## III. Statute of Limitations

The defendants have correctly identified the applicable time limitation for § 1983 actions in Tennessee as one year. *Cox v. Shelby State*, 48 Fed. Appx. 500, 506-7 (6th Cir. Sept. 24, 2002). The point at which the statute begins to run is less obvious. Under applicable federal law, the "discovery rule" applies. *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984), *Ball v. Union Carbide Corp.*, 385 F.3d 713, 722-23. Under that rule, "[t]he statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* That is, the rule allows for an extension of time where the plaintiff has already been wronged, but has not discovered the resulting injury through the exercise of reasonable diligence. However, if, at the time of the wrongful event, a greater than *de minimis* harm is discernable, then the time of that event controls.

5

It is difficult to apply the "discovery rule" in a case where the harm involved is purely prospective. The rule contemplates an action where wrongful conduct has already occurred, causing a harm that, for some reason, was not discovered for some time thereafter. *See, e.g., Ball v. Union Carbide*, 385 F.3d at 722-23 (where the court held that the limitations period started when the plaintiffs should have been alerted to their injuries by media reports, roughly fifty years after the tortious events occurred). The purpose of the rule is to extend the statute of limitations in cases where the plaintiff's failure to discover that harm was reasonable. *See Hicks v. Hines*, 826 F.2d 1543, 1545 (6th Cir. 1987). In this case, the plaintiff is seeking to enjoin an act that, he claims, will violate his religious beliefs. The allegedly wrongful act is the autopsy, which is scheduled to be performed on the plaintiff's corpse shortly following his execution. The plaintiff cannot be accused of failing to discover his injury; the injury has not occurred yet, and will not occur until 1:00 a.m. on June 28.

Because the harm cannot be remedied after the allegedly wrongful act has occurred, prospective relief is arguably available. The defendants are asking the court to apply the "discovery rule" in such a way as to bar the plaintiff from suit because he should have anticipated that he might be harmed at an earlier stage than he did anticipate that he might be harmed. However, as the Sixth Circuit has interpreted the "discovery rule," the earliest date that the statute can toll is the time at which the wrongful act takes place. *Sevier*, 742 F.2d at 273. In this case, that act will take place on June 28.

Moreover, even if the court were to apply the "discovery rule" in the novel fashion urged by the defendants, the one-year statute of limitations would not bar this action. That is because it cannot be said that the plaintiff "discovered" the potential for the injury at issue until he was told

6

that an autopsy would be performed on his corpse. The defendants have made no showing that the plaintiff made that discovery over one year ago.

## CONCLUSION

The plaintiff's Motion for Preliminary Injunction will be granted and the defendants will be enjoined from performing an autopsy on his corpse.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

7